Smith, J.
The questions presented in cases Nos. 163 and 166 are precisely the same, and arise in the same manner. Those in Nos. 164 and 165 are slightly different, but are substantially the same, and they may all be disposed of at the same time.
Kuhl and Deters each presented to the county commissioners for allowance, a bill amounting to $180, for twelve weeks’ services, said to have been rendered by them respectively as janitors in the recorder’s office. These bills having been rejected by the commissioners, an appeal in each case was taken *296 to the common pleas, and petitions were there filed, setting up this state of fact. That of Kuhl stated that the defendants were indebted to him in said sum of $180, for twelve weeks’ service rendered by him as janitor of the office of the county recorder, he having been appointed as such by Rabenstein, the recorder, who had approved the bill, which had been rejected by the commissioners.
The answer of the defendants alleges that Rabenstein became the recorder in January, 1883, and that his office was then in the court-house of the county. That the defendants and the board of control, during 1883 and 1884, and to this time, claimed the right to appoint suitable janitors, necessary to keep said office in order, and had appointed men, who during 1883 and part of 1884 had actually acted as such, but that after the burning of the court-house, and the selection by the defendants of other offices for the recorder, viz., since May 1, 1884, he had claimed the right to appoint the janitors for his office, and had asked the commissioners to approve of Kuhl and Deters as such, which they at once refused to do, and have always since refused to recognize them as such. That Rabenstein during all this time, from May 1, 1884, has refused to allow the janitors appointed by the defendants to care for his office, or to discharge their duties as such (which they have always been ready and willing to do,) and for which the county has been paying them; but on the contrary, he has had Deters and Kuhl to perform said duties, and it is for the work so done, for which they sue.
To this answer the plaintiff filed a general demurrer, which was overruled by the court, and the plaintiff not desiring to further plead his action, was dismissed. The pleadings and judgment in the Deters case were the same.
The only difference there was in the Moody case, who sued for services as night-watchman, is, that the commissioners aver that they had appointed a sufficient force of night-watchmen to guard the recorder’s office, and' that such duty had always been faithfully.performed by these appointees; but that Moody also appeared regularly on duty, under the appointment of the recorder, and claims his pay therefor; but that he has never been recognized by them as having any such right. A demurrer to this answer was overruled.
*297 The additional allegations in the petition of John N. Rahenstein are, that his duty was to take charge, as “ paper custodian,” of the books and papers of the recorder’s office after the records were completed, and that he had no care or custody of them before this was done.
To this petition a demurrer was filed and sustained by the court, and the petition dismissed, and it is now sought to reverse all of these judgments for error in sustáining the demurrer to the petition of Rabenstein, and the overruling of the .demurrers to the answers of the commissioners in the other cases.
The question thus raised in three of these cases is, whether the recorder has a right to appoint such officers as janitors and night-watchmen for his office, and thereby to oblige the county to pay such persons for services so rendered, under the circumstances stated in the answers of the commissioners.
If so, it must be by reason of some express provision of law, for without it, it is clear that no such officer’has any right to bind the county by his contracts. This is the province of the commissioners of the count}'.
It is conceded, as I understand, by the counsel for the plaintiff in error, that such is the case in all of the counties except Hamilton and Cuyahoga, which it is claimed stand on a different footing on account of some special legislation as to the fees of county officers in those counties, and the changes made in the general law by reason of this.
Section 1139 provides, that the office of the county recorder shall be kept in such room or rooms at the county seat as the commissioners provide, and section 859, that “ offices for the county officers, shall be provided by the commissioners when needed.”' It is argued by the counsel for the plaintiff in error, that by virtue of these provisions, and of the fact that the law gives to him the care and custody of the records and papers- of his office, that the right of the recorder to the room so provided for him is exclusive, as much' so as it was under the statute of June 1, 1831 (S. & C., 1228), which expressly provided that “ such offices should be for the sole and exclusive use of such officers as they may deem expedient,” and that he is, therefore, not bound to have janitors or night *298 watchmen on duty in the same, under the employment of others and in whom he has no confidence. The statute referred to was long ago repealed, but if it be admitted that the law now in force has the same meaning as the old law, and that the claim of the counsel, that the officer is not bound to have persons in or about his office who are not trustworthy, is correct, as we think it is, what then ? Does that, of itself, authorize him to employ persons at the expense of the county to do the work, when the county commissioners upon whom' the law imposes the duty of looking to the financial interests of the county have employed.men, against whose qualifications for the position there is no question raised, and who are ready and willing to perform these duties ? We think not, in the absence of any law giving such right.
It is claimed that this is done, impliedly at least, by section 1848, which points out the mode in which the deputies, clerks, book-keepers and other assistants of the county officers in Hamilton county are to be paid, to-wit, out of the sum fixed for that purpose by the judges of the court of common pleas; and which further provides, “that the county commissioners shall allow and order to be paid, as other claims against the county, all other reasonable expenses, necessary to the proper discharge of the duties of any of the above named officers,” of whom the recorder was one.
What are these other reasonable expenses to be so paid ? It certainly includes, we think, the proper office furniture, books for record, stationery and matters of this kind, and we think, might fairly be held to include the services of a janitor and night-watchman, if necessary, unless that kind of'expense is. provided for under another section, to which reference will be made. But how are these other articles or services to be furnished or contracted for, and by whom? Does the recorder, under this section, have the right by his simple engagement with another to bind the county? Or does not this duty of furnishing such things in the first instance devolve upon the commissioners, as the board having, by the law, the charge of the financial affairs of the county? The latter supposition, we think is the correct one, and that the county recorder or other county officer is bound to apply to this board for the *299 furnishing of matters of this kind; and that if thejuare in fact so furnished, and are suitable and proper for the purpose for which they are needed, they are to be received; and we think this principle applies even to the case of a janitor, who it is claimed should be a man in whom the recorder has confidence. And on this point we heartily concur in the view of the learned judge who delivered the opinion of the court in the case of Mayhew v. The Com’rs of Ham. Co., 1 Disney, 186. Judge Spencer on page 196 says: “ A proper degree of courtesy should doubtless be observed by the commissioners, in not appointing persons for the performance of these services who are obnoxious to, or have not the confidence of the judges of the court ” (in that case the question arose as to a janitor for the probate judge), “or where the individual appointed was incompetent or not trustworthy; but to render such appointment a matter of legal complaint, it must be of such a character as to wholly fail of the object intended, in which case it would be the duty of the court to cause the obnoxious person to be removed,” or, we may add, that in such case, in our judgment, the officer, after application to the commissioners for the appointment of a suitable person, and a refusal by them, could have the work performed by a proper person, and that he himself, rather than the person who performed the services would be entitled to recover the reasonable value thereof.
But aside from the authority which the commissioners impliedly have from the statutes, which make them the financial agents of the county, and with power to contract therefor, and the absence of any statutory provision giving to the recorder any such power, we are of the opinion that under a fair construction of section 1002, as amended January 31,1881, Yol. 3 Rev. Stats., 52, there is an express authority conferred upon the commissioners to appoint such janitors. It declares that the county commissioners shall provide suitable rooms in the the court-house for the board of .control, “ and may employ a county engineer, a superintendent and such Watchmen, janitors and other employees, as may be necessary to the care and custody of the court-house and jail.”
Louis Remelin, for plaintiffs in error.
Rufus B. Smith, County Solicitor, for commissioners of Hamilton county.
We think this section is not to have the narrow construction chftmed, that the janitors there spoken of are for the courthouse only, and that it does not apply to the rooms in which the offices are kept. At the time of the passage of this section (January 31, 1881, and which applied only to Hamilton county), as a matter of fact, the office of the recorder (together with those of all the other county officers) was situate in the court-house, and it was doubtless intended by the legislature in question to give this power to the county commissioners.
We are aware that this holding is in conflict, apparently at least, with the decision of the district court of this county in the Dalton case, reported in 9th Law Bulletin, 322. But that decision was made and founded on the terms of a statute since repealed, and in the amendment to which the emphatic words, on which the court seem to rely, were omitted — that is, “ that the officer to whom the room is assigned is to have the sole and exclusive use thereofWe think too' much force was given to this expression — under that law, as under the present, while the officer has the control of his office, it is for public purposes, and not to subserve his private ends. And the views we have expressed, we think are those taken by the superior court in 1 Disney, 186, to which we have referred.
As to the Rabenstein case, in which the suit is brought for service as paper custodian, we are of the opinion, that under the terms of section 1343, before quoted, he is such an “ assistant” as must be paid from the allowance made to the recorder to pay for his assistants. The recorder is the custodian of all books and papers belonging to the office, and it is his duty to care for and protect them. It is true that there is no compensation in terms fixed by the statute for this particular service, but it is compensated for by those fees which he receives for other services.
We think that the judgments in all of these cases should be affirmed with costs.